UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD ESTABROOK, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| vs. ) | 07 C 1228 | |
| ) | | |
| PIPER JAFFRAY COMPANIES AND ) | | |
| PIPER JAFFRAY COMPANIES ) | | |
| AMENDED AND RESTATED 2003 ) | | |
| ANNUAL LONG-TERM INCENTIVE ) | | |
| PLAN, ) | | |
| ) | | |
| Defendants. ) | | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Defendants Piper Jaffray Companies and Piper Jaffray Companies Amended and Restated 2003 Annual Long-Term Incentive Plan ("the Plan") (both Defendants hereinafter collectively referred to as "Piper Jaffray") to compel arbitration. For the reasons set forth below, the motion is granted and the case is dismissed without prejudice.

## BACKGROUND

Plaintiff Richard Estabrook is an Illinois citizen who formerly worked for Piper Jaffray as a securities broker. When Estabrook was hired in 2000, he was

required as a condition of his employment to register with the National Association of Securities Dealers ("NASD"). NASD is a self-regulatory organization, or SRO. The registration document is entitled "Form U4: Uniform Application for Securities Industry Registration or Transfer" (hereinafter referred to as "Form U4"). The application states that Estabrook, as the signatory, "agree[s] to arbitrate any dispute, claim or controversy that may arise between me and my firm...that is required to be arbitrated under the rules...of the SROs indicated in item 11[1] as may be amended from time to time...." NASD Code of Arbitration Procedure Rule 10201 provides

---

[1] Estabrook takes issue with the fact that the copy of his Form U4 that Piper Jaffray provided to this court does not clearly show what information is contained in item 11, particularly whether NASD was an SRO indicated there . When Estabrook completed his Form U4 in 2000, NASD was in the process of converting many of its forms from paper to electronic format. *See*, *e.g.*, NASD Notice to Members 99-56, available at http://www.nasd.com/web/ groups/rules_regs/documents/notice_to_members/nasdw_004215.pdf; SR-NASD-98-96, available at http://www.nasd.com/web/groups/rules_regs/documents/rule_filing/ nasdw_000072.pdf; 61 Fed. Reg. 36,595 (July 11, 1996). As a result, the forms underwent multiple revisions before the numbering system was jettisoned in favor of the subject headings used in the current online version of the form. *See* SR-NASD-2002-05 at 8, available at http://www.nasd.com/web/groups/rules_regs/documents/rule_filing/nasdw_000951.pdf. The interim paper-based form in use immediately before Estabrook filed his online application contains a provision similar to the one to which he objects directing the reader's attention to "item 10," which corresponds to a list of SROs. *See* Interim Form U-4 (November 1997 revision) at 1, 4, available at http://www.nasd.com/web/groups/rules_regs/documents/ notice_to_members/nasdw_005345.pdf. In addition, documentation provided to the Securities and Exchange Commission changed the title of item 11 on the 1996 Form U-4 to "To Be Registered With The Following SROs..." *See* SR-NASD-98-96 at 19. These clues, combined with the lack of a contention from Estabrook that he did not register with NASD and thus was not subject to its rules regarding arbitration, persuades us that the absence of a specific indication that NASD was an SRO identified in item 11 of his Form U4 is of no moment.

that disputes, claims, and controversies between members and associated persons[2] arising in connection with the activities of such associated person or out of the employment of such associated person or its termination shall be arbitrated if such arbitration is requested by a member. Piper Jaffray is a member of the NASD, and Estabrook was an associated person while he was employed with Piper Jaffray. Around the same time that he completed his Form U4, Estabrook executed a memorandum of understanding with Piper Jaffray explaining the import of the arbitration clause of the form as well as giving some general information about differences between arbitration and court proceedings.

As part of its efforts to attract, retain, and motivate employees, Piper Jaffray had incentive programs including stock options, grants of restricted stock, and performance awards. These incentives were governed by the Plan. Only "Eligible Individuals" could participate in the Plan. These individuals were defined as current employees, prospective employees who had accepted an offer of employment, officers, directors, consultants providing services to Piper Jaffray or its affiliates, or prospective consultants who had accepted an offer of consultancy. The Plan provided that incentive awards could be forfeited in certain specified circumstances.

---

[2]Though the NASD Code of Arbitration Procedure does not define the term "associated person," the NASD By-Laws specify that it includes "a natural person who is registered or applied for registration under the Rules of the [NASD]." NASD By-Laws, Art. I(cc).

In 2004 and 2005, Estabrook entered into three Restricted Stock Agreements with Piper Jaffray pursuant to the terms of the Plan. The stock was not to vest until February 2007, February 2008, and May 2008. Each agreement specified that it was to be construed and interpreted under Delaware state law. Each also contained the following integration clause: "This Agreement and the Plan set forth the entire agreement and understanding of the parties hereto with respect to the issuance and sale of the Restricted Shares...and supersede all prior agreements, arrangements, plans, and understandings relating to the issuance and sale of the Restricted Shares."

In October 2005, Estabrook's employment was terminated. Piper Jaffray revoked his awards of restricted stock, claiming that the shares were forfeited. On January 22, 2007, Estabrook filed suit for specific performance, breach of contract, and declaratory judgment in the Circuit Court of Cook County. Piper Jaffray timely removed the case to this court. Based on their belief that the issues in the complaint arise out of Estabrook's employment with them and/or its termination, they requested by letter that he submit to arbitration. When he refused, they filed the instant motion to compel arbitration.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") indicates a strong federal policy in favor of the enforcement of private arbitration agreements. 9 U.S.C. § 1 *et seq.*;

*Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 225-26, 107 S. Ct. 2332 (1987). According to the FAA, a written agreement to arbitrate "in a contract evidencing a transaction involving commerce ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Moses H. Cone Mem'l Hosp. v. Mercury Construction*, 460 U.S. 1, 24, 103 S. Ct. 927 (1983). Where a contract includes an arbitration clause, the clause creates a presumption that the dispute should be arbitrated, unless the party opposing arbitration can show that the clause is incapable of an interpretation that could cover the dispute at hand. *AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415 (1986). A motion to compel arbitration should be granted when three things are shown: "a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Zurich American Ins. Co. v. Watts Industries, Inc.*, 417 F.3d 682, 687 (7th Cir. 2005).

With these principles in mind, we turn our attention to Piper Jaffray's motion.

## DISCUSSION

As a threshold matter, we note that Estabrook has asserted that we should apply Delaware law rather than federal law to decide the instant motion in light of the choice of law provision of the Restricted Stock Agreements. Though the

agreements unequivocally indicate that they will be construed and interpreted under the laws of the state of Delaware, Delaware law also contains a strong presumption in favor of arbitration. *SBC Interactive, Inc. v. Corporate Media Partners*, 714 A.2d 758, 761 (Del. 1998). Echoing the U.S. Supreme Court's statement in *Moses H. Cone*, 460 U.S. at 24-25, 103 S. Ct. at 941, the Delaware Supreme Court has established that, in Delaware, doubts as to the scope of a valid arbitration agreement are usually to be resolved in favor of arbitrating the issue in question. *SBC Interactive*, 714 A.2d at 761.[3]

Estabrook does not deny that, in signing the Form U4, he agreed to arbitration under its terms. Instead, he insists that the Restricted Stock Agreements, through their integration clauses, revoked his previous agreement to arbitrate disputes regarding his employment with Piper Jaffray. We do not share Estabrook's conviction about the effect of the integration clauses within the Restricted Stock Agreements.

---

[3] One significant exception to this rule applies to the question of who decides whether the parties agreed to arbitrate in the first instance. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45, 115 S. Ct. 1920, 1924 (1995); *SBC Interactive*, 714 A.2d at 761. This narrow issue is one of contract interpretation for a court, in the absence of a clear indication that the parties wished an arbitrator to decide whether a case should be arbitrated. *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 651, 106 S. Ct. 1415, 1420 (1986); *SBC Interactive, Inc. v. Corporate Media Partners*, 714 A.2d 758, 761 (Del. 1998); *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998). Estabrook cites *Riley* for the proposition that the presumption of arbitrability falls away in instances other than where the question of whether the parties intended the court or the arbitrator to determine arbitrability. Though the sentence to which he alludes could support that interpretation if read in isolation, the remainder of the paragraph in which it is contained makes clear that *Riley* is in line with *First Options*, *AT&T Technologies*, and *SBC Interactive*.

A plain reading of the language of the integration clauses demonstrates that their reach is not as broad as Estabrook would make it out to be. By their own terms, they supersede only other agreements relating to the issuance and sale of the stock, not the forum where disputes will be decided. In support of his position, Estabrook relies upon cases involving integration clauses broader than that of the Restricted Stock Agreements. *See Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 778 (10th Cir. 1998) ("supersedes any and all prior agreements...relating to the subject matter [of this agreement]"); *Kanuth v. Prescott, Ball & Turben, Inc.*, 1988 WL 90392 at *2 (stating that provisions within other agreements "arguably retrench the limit of the U-4 [sic] form"). Estabrook also places particular emphasis on *Hough Assocs., Inc. v. Hill*, 2007 WL 148751 (Del. Ch. 2007), in which a Delaware court concluded that an arbitration provision in one agreement between an employer and an employee did not mandate arbitration of a dispute arising out of a second agreement executed on the same day that did not include an arbitration provision. However, unlike the Restricted Stock Agreements, the agreement in *Hough* that did not contain an arbitration clause specifically referred to remedies that would be available only before a court of law.[4] *See id.* at *12. In light of this specific reference, the court concluded as a matter of contract

---

[4]*Hough* does not provide the text of the integration clauses at issue.

interpretation that it could not incorporate a directly conflicting provision from another agreement. *See id.* The Restricted Stock Agreements contain no provision comparable to the one upon which the *Hough* court based its decision. The language that appears in those agreements gives no indication that Estabrook and Piper Jaffray intended for disputes to be resolved in a particular forum, and that question does not relate to the issuance or sale of restricted stock. Because there is no overlap between the integration clauses and the Form U4 arbitration provision, we conclude that the Restricted Stock Agreements are silent as to the forum where disputes are to be decided.

The parties have not identified, nor has our research revealed, any Seventh Circuit or Delaware cases involving an agreement to arbitrate and a subsequent agreement that is silent on the issue. However, in an analogous context, the Delaware Supreme Court held that statutory silence is insufficient to override the state's policy in favor of resolving disputes with arbitration when parties have agreed to pursue that avenue. *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 913 (Del. 1989). Furthermore, the California Appellate Court has considered a case that is factually indistinguishable from this one and resolved it in favor of sending the parties to arbitration. *Cione v. Foresters Equity Services, Inc.*, 68 Cal. Rptr. 2d 167, 173 (Cal. Ct. App. 1997). *Cione* involved a securities broker who

signed a Form U4 in 1988 as a condition of his employment with Foresters, an NASD member. *Id.* at 630. Three years later, he executed an employment agreement with Foresters; that agreement was silent as to the forum where disputes arising from it would be resolved. *Id.* at 631. Cione was later fired and sued for wrongful termination. *Id.* The court concluded that the silence of the later agreement was insufficient to undo the agreement to arbitrate in the Form U4, despite the presence of an integration clause that is broader than those included in the Restricted Stock Agreements.[5] *Id.* at 637-38. The Third Circuit reached a similar conclusion in *Barrowclough v. Kidder, Peabody & Co., Inc.*, 752 F.2d 923, 938 (3rd Cir. 1985), overruled on other grounds by *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1111-12 (3rd Cir. 1993). These authorities persuade us that the presumption in favor of arbitration discussed above means that more than mere silence as to arbitrability is necessary to override a previous agreement to arbitrate.

Last but not least, we note that the cases upon which Estabrook relies arise in situations where parties would normally expect to resolve their differences in court, not before an arbitrator. By contrast, it is common practice within the securities

---

[5]The integration clause stated: "This Agreement contains the entire understanding of the parties hereto with respect to the subject matter contained herein. There are no restrictions, promises, representations, warranties, covenants or undertakings, other than those expressly set forth or referred to in this Agreement." *Cione*, 68 Cal. Rptr. 2d at 174.

trading industry to arbitrate employment disputes. *See*, *e.g.*, *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 363 (7th Cir. 1999) (noting that five major stock exchanges require employment disputes to be arbitrated); *Marciano v. MONY Life Ins. Co.*, 470 F. Supp. 2d 518, 526 n.12 (E.D. Pa. 2007) (commenting that "arbitration is widely accepted and is the almost-exclusive means of dispute resolution among and between actors in the [securities] industry"). Thus, the default position when parties such as Estabrook and Piper Jaffray who have a relationship to the NASD do not otherwise specify a forum for dispute resolution is to bring them to arbitration. According the federal (and Delaware state) presumption in favor of arbitrability when the scope of a valid arbitration clause is at issue, we conclude that Estabrook has not demonstrated that the parties intended to override his previously assumed obligation to arbitrate disputes with his former employer. Consequently, this dispute is one within the scope of the arbitration clause contained in the Form U4 and the motion to compel arbitration must be granted.

Though 9 U.S.C. § 3 states that court proceedings should be stayed when an issue is determined to be subject to arbitration, where all issues within the case are arbitrable, the preferable course is dismissal without prejudice. *See*, *e.g.*, *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *U.S. & Int'l Travel & Tours, Inc. v. Tarom-S.A.*, 98 F. Supp. 2d 979, 981 (N.D. Ill. 2000). Because each

of the counts in Estabrook's complaint arises out of his employment or its termination, all are subject to arbitration, and the case is therefore dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Piper Jaffray's motion to compel arbitration is granted, and the case is dismissed without prejudice.

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Dated: July 5, 2007